# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WISCONSIN

---

JASON T. PROCKNOW,

        Plaintiff,

        v.                              Case No.  04-C-0872

STEVE SCHUELER,
GARY R. McCAUGHTRY,
SGT. HILBERT,
CHARLIE BROWN,
BETH LIND,
CHAPLAIN WITCH,
STANLEY TONN,
JAMES MUENCHOW,
MARK REINKE,
OFFICER PASSIG,
OFFICER LOWERY,
JOHN RAY,
CINDY O'DONNELL,
SANDY HAUTAMAKI,
MATTHEW J. FRANK,
CURT JENNSEN,
SGT. McCARTHY,
SGT. BAUER, and
JOHN DOES 1-3,

        Defendants.

---

ORDER GRANTING THE PLAINTIFF'S PETITION TO PROCEED *IN FORMA PAUPERIS* (DOC. #2), SCREENING THE COMPLAINT PURSUANT TO 28 U.S.C. §1915A, ORDERING THE MARSHAL TO SERVE THE DEFENDANTS, and DIRECTING THE DEFENDANTS TO RESPOND TO THE PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF (DOC. #3) WITHIN 21 DAYS.

        The plaintiff, Jason T. Procknow, who is incarcerated at the Waupun

Correctional Institution (WCI), lodged this *pro se* civil rights complaint pursuant to 42

U.S.C. § 1983, along with a petition to proceed *in forma pauperis*.  The petition is ready for

determination and the complaint for screening pursuant to 28 U.S.C. § 1915A. Also addressed herein is the plaintiff's motion for injunctive relief.

## I. PETITION TO PROCEED *IN FORMA PAUPERIS*

As ordered, the plaintiff paid an initial partial filing fee in the amount of $2.60 on October 13, 2004. *See* September 29, 2004 Order. Pursuant to 28 U.S.C. § 1915(b)(1), the plaintiff is required to pay the full $150 filing fee for this action.[1] His petition to proceed *in forma pauperis* will be granted, and the $147.40 balance of the filing fee will be collected in the manner set forth below.

## II. SCREENING PURSUANT TO 28 U.S.C. § 1915A

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1) & (2).

A claim is legally frivolous when it lacks an arguable basis in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are baseless. *Neitzke*, 490 U.S. at 327. A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that the plaintiff can

---

[1]The plaintiff lodged this complaint prior to February 7, 2005, the date on which the filing fee increased to $250. *See* 28 U.S.C. § 1914(a).

2

prove no set of facts in support of the claim or claims that would entitle him to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976), and construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). The court is obliged to give the plaintiff's pro se allegations, however inartfully pleaded, a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

To state a claim for relief under 42 U.S.C. § 1983, the plaintiff must allege: (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was visited upon him by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

The complaint enumerates six § 1983 claims identified as: "Kosher Meals & Harassment;" "Denial of Religious Materials;" "Denial of Publications, Books, Magazines, [and] Newspapers;" "Punishment With No Due Process;" "Conditions of Noise & Rec on HSC;" and "Loss of Personal Property." (Complaint at 3-15). In addition, he asserts claims under §§ 1985 and 1986 and the Religious Land Use and Institutionalized Persons Act (RLUIPA). The court will examine each in turn and discuss the allegations in the complaint as set forth below.

**A.    Claim 1:  Kosher Meals & Harassment**

The plaintiff asserts that he requested a Jewish Kosher diet in August or September of 2003. *Id.* at 3. He met with resistance from WCI staff. *Id.* at 4. Defendant

3

Chaplain Witch told the plaintiff he would regret starting the Kosher diet. *Id.* Also, the plaintiff was told that staff would make the food as bad as possible to deter him from a Kosher diet. *Id.* Defendant Witch and defendant Officers John Does 1-3 made references to breaking "the last Jew off his diet in less than two months," and said they would do the same to the plaintiff. *Id.*

The plaintiff was allowed to start a Kosher diet on October 23, 2003. *Id.* From the start, the Kosher trays "did not comply to Kosher standards in the way it was prepared, served, or delivered." *Id.* The plaintiff wrote detailed letters addressing his concerns to defendants Warden Gary R. McCaughtry, Captain Steve Schueler, Witch, Food Services Administrator Charlie Brown, and Food Service Manager Beth Lind. *Id.* Only defendant Brown responded by memo, but did not address or "fix" the problems, and a few days later sent defendant Witch to the plaintiff's door "to threaten [him] to quit writing the kitchen with [his] concerns." *Id.*

The plaintiff wrote several letters to defendants Brown, Lind, Witch, Schueler, McCaughtry, and Curt Jennsen, detailing the deficiencies in the preparation of the Kosher trays. *Id.* A proposal that the plaintiff receive a vegetarian tray was rejected by the plaintiff. *Id.* at 5.

In November 2003, the plaintiff wrote to defendants Brown, Witch, and McCaughtry to inform them he was receiving the same food every day. *Id.* Defendant Brown responded that the Kosher diet was extremely limited. *Id.* However, defendant McCaughtry did not respond. *Id.* The plaintiff wrote to defendant Secretary of the Wisconsin Department of Corrections Matthew J. Frank several times requesting help. *Id.*

4

On November 7, 2003, the plaintiff filed an inmate complaint, which defendant James Muenchow dismissed without addressing the issues raised. *Id.* Defendant McCaughtry "signed off" on the dismissal. *Id.* Defendant John Ray dismissed the appeal, and defendant Cindy O'Donnell affirmed the dismissal with no investigation. *Id.*

In October or November of 2003, while passing out meal trays, defendant Officers Lowery and John Does 1-3 commented about the "Jew Bastard" receiving the Kosher tray. *Id.* In addition, these officers made the plaintiff bark like a dog on his hands and knees to receive his tray. *Id.*

On November 26, 2003, after refusing to abandon his Kosher diet, the plaintiff received a note in his meal tray. *Id.* The note was written in pencil on wax paper and read "ENJOY YOUR SPIT KIKE." *Id.* at 5-6. The plaintiff states that inmates do not have access to either wax paper or pencils in the HSC unit. *Id.* at 6. The tray was delivered by defendants Mark Reinke and Correctional Officer Passig. *Id.* The plaintiff filed an inmate complaint which was dismissed by defendant Stanley Tonn as having previously been addressed by inmate complaints filed before the November 26 incident. *Id.* Defendant McCaughtry affirmed the Tonn decision without investigation. *Id.*

The plaintiff requested that he be taken off the Kosher tray until the note incident was investigated because he was afraid to eat the food on the Kosher tray. *Id.* He indicated that the only thing he was willing to eat on his tray was the piece of fresh fruit. *Id.* Instead of temporarily stopping the plaintiff's Kosher tray as requested, the kitchen staff stopped sending fruit to the plaintiff. *Id.* at 6-7. As a result, he went 14 days without eating

5

and lost nearly 20 pounds. *Id.* at 7. Failure to eat and stress caused the plaintiff to suffer severe headaches, flu-like symptoms, depression, and hair loss. *Id.*

On November 26, 2003, the plaintiff wrote defendants Scheuler, Witch, and McCaughtry inquiring about a new Kosher diet pursuant to Wis. Admin. Code § DOC 309.61. *Id.* He did not receive a response from defendant McCaughtry. *Id.* He filed an inmate complaint which was affirmed by defendant Tonn, who indicated on December 8, 2003, that a meeting would be scheduled with the plaintiff and appropriate staff. *Id.* However, as of July 31, 2004, neither a meeting nor a resolution of the issue occurred. *Id.*

"Inmates retain the right to exercise their religious beliefs." *Alston v. DeBruyn*, 13 F.3d 1036, 1039 (7th Cir. 1994) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Cruz v. Beto*, 405 U.S. 319, 322 (1972)). The Free Exercise Clause protects a prisoner's right to practice his religion as long as doing so does not unduly burden the institution. *Richards v. White*, 957 F.2d 471, 474 (7th Cir. 1992). A prison regulation that infringes upon an inmate's free exercise rights may be valid "'if it is reasonably related to legitimate penological interests.'" *Alston*, 13 F.3d at 1039 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *see also Al-Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir. 1991) (DOC "need only make reasonable efforts to afford inmates an opportunity to practice their faith").

"A prison may restrict a prisoner's ability to adhere absolutely to a particular tenet of his religion, and if the prison has sound penological interests supporting the restriction and, if those interests outweigh the prisoner's religious interests, the restriction does not violate the First Amendment." *Canedy v. Boardman*, 91 F.3d 30, 33 (7th Cir.

1996) (citing *O'Lone*, 482 U.S. at 352; *Hunafa v. Murphy*, 907 F.2d 46, 48 (7th Cir. 1990)). A standard of reasonableness, rather than heightened scrutiny, applies in the prison context to permit prison administrators "'to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration[,]' and thereby prevent unnecessary federal court involvement in the administration of prisons." *Al-Alamin*, 926 F.2d at 685 (quoting *Turner*, 482 U.S. at 89). Nonetheless, a prisoner may have a right to receive meals, consistent with the tenets of his faith, of such adequate nutritional value as to maintain him in good health.[2] *Hunafa*, 907 F.2d at 47 (citing *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987) (per curiam); *Moorish Science Temple v. Smith*, 693 F.2d 987, 990 (2nd Cir. 1982); *Kahane v. Carlson*, 527 F.2d 492, 495 (2nd Cir. 1975); *Barnett v. Rodgers*, 410 F.2d 995, 1002-03 (D.C. Cir. 1969)). To state a claim for retaliation, a prisoner need only allege that he engaged in conduct protected by the First Amendment, and that defendants retaliated against him based on that conduct. *See Walker v. Thompson*, 288 F.3d 1005, 1008-09 (7th Cir. 2002).

The plaintiff has alleged that he engaged in conduct protected by the First Amendment, maintaining a religious diet. He alleges that his religious diet was interfered with absent penological reasons, and that he was retaliated against for maintaining such a diet. Consequently, the plaintiff will be permitted to proceed on his First Amendment and retaliation claims against the following defendants: Witch, John Does 1-3, McCaughtry,

---

[2]While the Seventh Circuit's holding in *Hunafa* was in line with earlier cases in other circuits, the court noted that *Employment Division v. Smith*, 494 U.S. 872 (1990), "cut back, possibly to minute dimensions, the doctrine that requires government to accommodate, at some cost, minority religious preferences," and commended the issue to the parties and the district court on remand. *Hunafa*, 907 F.2d at 48. Thus, it is unclear whether *Hunafa's* holding remains the law.

Schueler, Brown, Lind, Jennsen, Frank, Muenchow, Ray, O'Donnell, Lowery, Reinke, Passig, and Stanley.

The plaintiff is advised that it will be necessary, at some point in the future, to identify the defendants named as John Does 1-3. The plaintiff may use the discovery process to determine the identities of the unnamed defendants. *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996).

### B.    Claim 2: Denial of Religious Materials

The plaintiff made several requests for religious "articles of faith" to defendants McCaughtry, Witch, Jennsen, and Schueler. (Complaint at 8). The plaintiff was told that although he is non-punitive status, he could not have the requested items because he is housed in the HSC Unit. *Id.* Also, the plaintiff is only permitted to have one religious text. *Id.*

On November 26, 2003, the plaintiff wrote to defendant Schueler sent copies of the letter to defendants McCaughtry and Witch. *Id.* He requested the following:

> (a) Tritzes - which is a fringed garment and worn all day; (B.) yarmulke - skull cap worn at all times; (C.) Talus - prayer shawl; (D.) Tephillin - arm wrap worn at morning prayers; (E.) Talmud - Holy Book; (F.) Prayer Books; (G.) Grape juice and challus rolls on Sabbath; [and] (H.) Religious Publications.

*Id.* On December 18, 2003, defendant Schueler denied all of the requested items while admitting he did not know what the items were. *Id.* Defendant Schueler informed the plaintff that he was only allowed to have the Torah. *Id.*

The plaintiff filed an inmate complaint on December 16, 2003, concerning the denial of these items. *Id.* Defendant James Muenchow dismissed the complaint and

defendant McCaughtry affirmed the dismissal without investigation. *Id.* Defendant John Ray and defendant Cindy O'Donnell dismissed the plaintiff's appeals of the inmate complaint. *Id.*

The plaintiff wrote to defendants Witch and McCaughtry several times requesting religious items, but the defendants did not respond. *Id.* at 8-9. "They do supply some Christian books on the book cart, but refuse Jewish books." *Id.* at 9.

"Inmates retain the right to exercise their religious beliefs." *Alston*, 13 F.3d at 1039 (citing *O'Lone*, 482 U.S. at 348); *Cruz,* 405 U.S. at 322. The Free Exercise Clause protects a prisoner's right to practice his religion as long as doing so does not unduly burden the institution. *Richards*, 957 F.2d at 474. Arguably, the plaintiff states a claim that denying him religious materials violated his right of free exercise of religion. He will be permitted to proceed on this First Amendment claim against defendants Schueler, McCaughtry, Witch, Muenchow, Ray, O'Donnell, and Jennsen.

### C.    Claim 3: Denial of Publications, Books, Magazines, and Newspapers

The plaintiff wrote to defendant Schueler to inquire why prisoners were denied "publications, magazines, newspapers, books, [and] religious publications," but received no response. (Complaint at 9). On September 18, 2003, the plaintiff filed an inmate complaint concerning the matter. *Id.* Defendant Tonn responded stating that prisoners housed in the HSC unit are "afforded only the necessities." *Id.* Defendant Tonn's decision states that allowing prisoners two books per week is "'doing more than required to make recreational reading materials available in HSC.'" *Id.* at 9. However, the

9

plaintiff states that defendant Tonn admitted that the books are "hoarded by other inmates, destroyed, missing pages, and worn out, all of which are basically unreadable."  *Id.*

Defendant McCaughtry affirmed defendant Tonn's dismissal of the plaintiff's inmate complaint.  *Id.*  The plaintiff sent out his appeal of the dismissal two days before the deadline for such an appeal.  *Id.*  Defendant Ray acknowledged receipt of the plaintiff's appeal after the deadline and dismissed the appeal as untimely without investigation.  *Id.*  Defendant O'Donnell affirmed the dismissal without investigation.  *Id.*

Arbitrary denial of access to published materials violates a prisoner's First Amendment rights.  *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996).  Liberally construing the complaint, the plaintiff states a claim that he was denied access to published materials.  *See id.* (allowing plaintiff to proceed on claim that "his access to reading material was greatly circumscribed").  Hence, he will be permitted to proceed on this First Amendment claim against defendants Scheuler, Tonn, McCaughtry, Ray, and O'Donnell.

### D.  Claim 4: Punishment Without Due Process

The plaintiff refused to accept a dinner tray on September 17, 2003, because several r people claimed to see officers spit into the plaintiff's food.  (Complaint at 10). Defendant Sergeant Bauer issued the plaintiff a conduct report for refusing to accept the tray, although there is no rule requiring prisoners to accept trays.  *Id.*

Defendant Bauer moved the plaintiff to an observation cell, placed the plaintiff on "'kneel down back of cell' restriction and 'seg loaf' restriction, for 30 days."  *Id.* Defendant John Doe Supervisor authorized this treatment.  *Id.*  The restriction required the

plaintiff to "get on his hands and knees to receive food, supplies, [and] books." *Id.*
Defendants Lowery and John Does 1-3 told the plaintiff to bark like a dog while on his
hands and knees to receive food. *Id.* at 7, 10. As a result, the plaintiff suffered weight loss
and major depression. *Id.* at 10.

The plaintiff complained that he had been punished without due process, but
neither defendant Schueler nor defendant McCaughtry responded to his complaints. *Id.*
The conduct report was dismissed at a hearing on October 9, 2003. *Id.* Nonetheless,
defendants Schueler and Bauer refused to lift the back of the cell and segregation loaf
restrictions. *Id.*

On January 10, 2004, the plaintiff filed an inmate complaint concerning the
treatment which was dismissed by defendant Muenchow. *Id.* at 11. Defendant
McCaughtry affirmed the dismissal. *Id.* The plaintiff appealed and defendants Ray and
O'Donnell dismissed the appeal without investigation. *Id.*

The disciplinary case against the plaintiff for refusing to accept an evening
meal, "even if it was fabricated, implicated no federally protected liberty interest" because
the punishments received – segregation loaf restriction and kneel-down restriction – raise
no due process concerns. *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) (citing
*Sandin v. Conner*, 515 U.S. 472, 486 (1995) (disciplinary segregation not atypical
hardship); *Thomas v. Ramos*, 130 F.3d 754, 761-62 & n. 8 (7th Cir. 1997) (temporary
segregation and demotion to C-grade status not atypical hardship); *Cochran v. Buss*, 381
F.3d 637, 641 (7th Cir. 2004) (transfer). Accordingly, the plaintiff does not state a due
process claim and Claim 4 will be dismissed.

11

### E.    Claim 5: Noise and Recreation

After complaining to defendant Schueler and other HSC staff several times, the plaintiff filed an inmate complaint on August 25, 2003, concerning the excessive noise levels in the HSC unit.  (Complaint at 11).  HSC Handbook rules concerning noise between 9:00 p.m. and 6:00 a.m. are not enforced.  *Id.*  Although he acknowledged an extreme noise problem, defendant Muenchow dismissed the plaintiff's inmate complaint on September 2, 2003, and sent copies of the dismissal to defendants Schueler and Jennsen. *Id.*  Defendant Ray dismissed the plaintiff's appeal as untimely and defendant O'Donnell affirmed the decision.  *Id.* at 11-12.

On February 5, 2004, the plaintiff wrote to defendant Schueler explaining that he could not sleep, and that nothing was being done about the noise level.  *Id.* at 12. Defendant Schueler responded the HSC unit was louder than it should be and that he had instructed staff to issue conduct reports.  *Id.*  No conduct reports are being issued, the HSC unit is louder than ever, and the plaintiff is suffering severe headaches as a result.  *Id.* Defendant Muenchow dismissed a subsequent inmate complaint as redundant and defendant McCaughtry affirmed the dismissal.  *Id.* at 12-13.

Meals, recreational opportunities and the distribution of supplies is announced over a hallway speaker in the HSC unit.  *Id.* at 13.  Due to the extreme noise, he was unable to hear the announcement and present himself at his cell door, and thus missed numerous meals and showers.  *Id.*  The plaintiff's inmate complaint about this matter was dismissed by defendant Muenchow as an "insignificant matter," and defendant McCaughtry affirmed the decision.  *Id.*

In December 2003, defendant Schueler denied the plaintiff's request for warm clothing to wear during recreation when the temperatures were between 20 and 30 degrees below zero.  *Id.*  Also, the recreation "cages" are smaller than cells and covered in "spit, urine and feces."  *Id.*  A lack of exercise has therefore aggravated the plaintiff's knee injury.  *Id.*  The plaintiff's complaints about recreation conditions were dismissed by defendant Muenchow in Janaury 2004.  Defendant McCaughtry affirmed the dismissal.  *Id.* Defendants Ray dismissed the plaintiff's appeal and defendant O'Donnell affirmed the dismissal without investigation.  *Id.*

The Eighth Amendment proscribes cruel and unusual punishment in cases of official conduct which is not part of the formal penalty for a crime if a plaintiff demonstrates: (1) a "sufficiently serious" deprivation and, (2) that officials acted with a "sufficiently culpable state of mind."  *Wilson v. Seiter*, 501 U.S. 294, 299 (1991).  Mechanical rules are not to be employed in determining whether an alleged deprivation violates the Eighth Amendment.  *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981).  However, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation."  *Wilson*, 501 U.S. at 298 (quoting *Rhodes*, 452 U.S. at 347).  Prison conditions cannot rise to the level of cruel and unusual punishment unless the conditions produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise."  *Wilson*, 501 U.S. at 304.

"Although prison officials may violate an inmate's Eighth Amendment rights by subjecting him to excessive noise, this is only when they are deliberately indifferent to a substantial risk that the noise will cause the inmate serious harm."  *King v. Frank*, 328

F. Supp. 2d 940, 946 (W.D. Wis. 2004) (citing *Antonelli*, 81 F.3d at 1433; *Lunsford v. Bennett*, 17 F.3d 1574 (7th Cir. 1994)). The plaintiff alleges that he cannot sleep and suffers severe headaches as a result of the noise. This arguably states an Eighth Amendment condition of confinement claim. *See King*, 328 F. Supp. 2d at 946 (citing *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (issue of fact existed on Eighth Amendment excessive noise claim when plaintiff adduced evidence that "at all times day and night inmates were 'screaming, wailing, crying, singing and yelling,' often in groups, and that there was a 'constant, loud banging'")). Thus, the plaintiff may proceed on an Eighth Amendment claim based on excessive noise against defendants Schueler, Muenchow, Jennsen, Ray, O'Donnell, and McCaughtry.

The total denial of the opportunity to exercise may rise to a constitutional violation, but "short-term denials of exercise may be inevitable in the prison context and are not so detrimental as to constitute a constitutional deprivation." *Delaney v. DeTella*, 256 F.3d 679, 683-84 (7th Cir. 2001) (finding that housing inmate for six months "in a cell the size of a phone booth without any meaningful chance to exercise" violated the constitution); *see also Thomas v. Ramos*, 130 F.3d 754, 764 (7th Cir. 1997) (no Eighth Amendment violation during a 70 day segregation period where plaintiff could do pushups, sit-ups, and jog in place in his cell); *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996) ("Lack of exercise may rise to a constitutional violation in extreme and prolonged situations where movement is denied to the point that the inmate's health is threatened."). The plaintiff alleges that his recreational opportunities were curtailed due to unsanitary and frigid recreation cell conditions. It is unclear whether the plaintiff was able to exercise in his own cell, however construing the complaint liberally at this stage, he will be permitted

14

to proceed on an Eighth Amendment claim concerning recreation against defendants Schueler, Muenchow, McCaughtry, Ray and O'Donnell.

### F.    Claim 6: Personal Property

Two days after arriving at WCI, a property officer told the plaintiff that he needed to "send several property items out." (Complaint at 14). The plaintiff noticed several packets of legal materials missing from his property and wrote to defendant Sgt. McCarthy to inquire about them. *Id.* Subsequently, the plaintiff learned that some of his legal materials, letters, books and other publications had been destroyed. *Id.* The plaintiff states that his inmate complaint concerning this matter was dismissed by defendant Tonn and the dismissal was affirmed by defendant McCaughtry. *Id.* at 14-15.

An individual is entitled to an opportunity for a hearing before the state permanently deprives him of his property. *Parratt v. Taylor*, 451 U.S. 527, 540 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). However, a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the state fails to provide an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

Wisconsin law provides tort remedies to individuals whose property has been converted or damaged by another. *See* Wis. Stat. §§ 893.34 and 893.51. If a deprivation of property did not occur as the result of some established state procedure (which the plaintiff does not allege) and state law provides an adequate post-deprivation remedy for redressing the missing property, due process has been satisfied. *Parratt*, 451 U.S. at

15

543-44; *see also Hamlin v. Vaudenberg*, 95 F.3d 580, 585 (7th Cir. 1996) (holding that Wisconsin's post-deprivation procedures are adequate, albeit in a different context). Thus, the plaintiff fails to state a due process claim for the confiscation of his property.

### G.    Claims Asserted Under 42 U.S.C. §§ 1985 and 1986

The plaintiff claims that defendants Schueler, McCaughtry, Brown, Lind, Tonn, Muenchow, Witch, Lowery, Ray, O'Donnell, Jennsen, and Bauer "violated 42 U.S.C.A. § 1985 by conspiring to interfere with civil rights, and depriving plaintiff of a right or privilege." (Complaint at 15). He further claims that "Those in supervisory position[s] violated 42 U.S.C.A. § 1986[,] Action for neglect to prevent violation after they learned of said violations." *Id.*

The plaintiff does not specify any subsection of 42 U.S.C. § 1985 under which he asserts a claim. The court finds the only possibly applicable subsection of § 1985 is subsection (3), as subsection (1) prohibits conspiracies preventing an officer of the United States from the performance of his duties and subsection (2) prohibits conspiracies to obstruct justice, intimidate a party, witness or juror. To prevail on a claim under § 1985(3) the plaintiff must establish that the defendants' actions were motivated by racial, or other class-based, discriminatory animus. *See Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002), *cert. denied*, 537 U.S. 821.

Although there is no special pleading standard for prisoner civil rights cases, *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002) (citing *Swierkiewicz v. Sorema*, 534 U.S. 506, 512-14 (2002)), the plaintiff must specify those minimum facts necessary to put the defendants on notice of the claims against them. *Beanstalk Group, Inc. v. AM General Corp.*, 283 F.3d 856, 863 (7th Cir. 2002). To state a § 1985(3) conspiracy claim, it is

16

sufficient "merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker*, 288 F.3d at 1007. The plaintiff has not indicated the purpose of the alleged conspiracy. Accordingly, he fails to state a claim.

The plaintiff also fails to state a claim under § 1986. "Section 1986 liability is derivative of Section 1985 liability . . . so that the dismissal of the Section 1985(3) claim requires dismissal of the Section 1986 claim." *Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 203 (7th Cir. 1985) (internal citation omitted); see 42 U.S.C. § 1986.

### H.     Claim Asserted Under Religious Land Use and Institutionalized Persons Act (RLUIPA). 42 U.S.C. §2000cc.

As it bears on this case, "RLUIPA forbids . . . prisons that receive federal funding to burden a prisoner's exercise of religion substantially unless the prison both has a compelling interest and employs the least restrictive means possible for protecting that interest." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003). The Wisconsin prison system receives federal funding. *Id.* at 1110 (citing *Charles v. Verhagen*, 348 F.3d 601, 606 (7th Cir. 2003)). "[T]o state a claim under RLUIPA a Wisconsin prisoner need allege only that the prison has substantially burdened a religious belief[.]" *Lindell*, 352 F.3d at 1110. The facts alleged by the plaintiff in support of Claims 1-3 are sufficient to state RLUIPA claims as well. Hence, he will be permitted to proceed under RLUIPA on these three claims.

### I.     Defendants Hilbert and Hautamaki

Although Sandy Hautamaki and Sgt. Hilbert are named as defendants in this action, the complaint lacks any allegations of their involvement in the matters about which

17

the plaintiff complains. "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Having failed to allege their personal involvement, the plaintiff does not state a claim against defendants Hautamaki and Hilbert. As a result, they will be dismissed.

## III.    MOTION FOR INJUNCTIVE RELIEF

The plaintiff filed a motion for injunctive relief seeking religious items and publications, as well as measure to be taken to ensure his ability to maintain a Kosher diet. (Motion for Injunctive Relief at 7-8). Consequently, the defendants will be directed to respond to the plaintiff's motion for injunctive relief.

**IT IS THEREFORE ORDERED** that the plaintiff's petition to proceed *in forma pauperis* (Doc. #2) is **granted.**

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect the $147.40 balance of the filing fee by capturing twenty percent of the income deposited to the plaintiff's prison trust account each month. Once the accumulated twenty percent deductions exceed $10.00, prison officials shall forward the accumulated deductions to the Clerk of Court in accordance with 28 U.S.C. § 1915(b)(2). Each payment shall be clearly identified by case name and number assigned to this action. Prison officials shall repeat this procedure until the filing fee is paid in full. The only payment for an amount less than $10.00 should be the final payment.

**IT IS FURTHER ORDERED** that the plaintiff may proceed on:

18

Claim 1 concerning denial of a religious diet and retaliation based on protected religious conduct in violation of the First Amendment and RLUIPA, 42 U.S.C. § 2000cc, as against defendants Witch, John Does 1-3, McCaughtry, Schueler, Brown, Lind, Jennsen, Frank, Muenchow, Ray, O'Donnell, Lowery, Reinke, Passig, and Stanley;

Claim 2 concerning the denial of religious materials in violation of the First Amendment and RLUIPA, 42 U.S.C. § 2000cc, as against defendants Schueler, McCaughtry, Witch, Muenchow, Ray, O'Donnell and Jennsen;

Claim 3 concerning the arbitrary denial of reading materials in violation of the First Amendment and RLUIPA, 42 U.S.C. § 2000cc, as against defendants Schueler, Tonn, McCaughtry, Ray and O'Donnell; and

Claim 5 concerning: the denial of recreation in violation of the Eighth Amendment as against defendants Schueler, Muenchow, McCaughtry, Ray and O'Donnell; and excessive cell noise in violation of the Eighth Amendment as against defendants Schueler, Muenchow, Jennsen, Ray, O'Donnell, and McCaughtry.

**IT IS FURTHER ORDERED** that Claims 4 and 6, as well as claims brought pursuant to 42 U.S.C. §§ 1985 and 1986 are dismissed.

**IT IS FURTHER ORDERED** that defendants Hilbert and Hautamaki are dismissed.

**IT IS FURTHER ORDERED** that the United States Marshal serve the complaint, a copy of this order and the waiver of service form and/or summons on the defendants pursuant to Fed. R. Civ. P. 4.

19

**IT IS FURTHER ORDERED** that the defendants shall file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that the defendants respond to the plaintiff's motion for injunctive relief (Doc. #3) within 21 days of the date of this order.

**IT IS FURTHER ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

The plaintiff is hereby notified that he is required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R. Civ. P. 5(a). The plaintiff should also retain a personal copy of each document. If the plaintiff does not have access to a photocopy machine, he may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk's Office of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 28th day of April, 2005.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. District Judge